

# NUMBERS 13-10-00448-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **TOMAS CAMINORREAL JR.** **A/K/A GUERO CAMINORREAL,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 24th District Court of Victoria County, Texas.

# OPINION

### Before Justices Rodriguez, Vela, and Perkes
### Opinion by Justice Perkes

Appellant, Tomas Caminorreal Jr. a/k/a Guero Caminorreal, appeals his conviction for aggravated assault, a second-degree felony enhanced by four prior offenses to a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 12.42(b), 22.02(a)(2) (West 2011). Following a jury trial, appellant was found guilty and sentenced to ninety-nine years of confinement in the Texas Department of Criminal Justice, Institutional Division. The jury

also found that appellant used or exhibited a deadly weapon during the commission of the offense, and the trial court entered the deadly-weapon finding in its judgment. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(g) (West 2011).

By two issues, appellant argues that (1) the trial court erred by not instructing the jury on self defense; and (2) the evidence is "factually insufficient" to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense. We affirm.

## I. FACTUAL BACKGROUND

Late one night, appellant approached the home of Sarah Clymer, a friend with whom he had an "off and on" romantic relationship. According to appellant, Clymer was pregnant and he wanted to check on her. At the time he arrived, Clymer was hosting a party. Friends outside the house told him that they would go inside and let Clymer know that he wanted to see her. Clymer did not want to see appellant and told her friend, Michael Sanabria, to tell appellant to go away.

Sanabria testified that when he went outside and told appellant that Clymer did not want to see him, appellant raised his hands to fight. A fight ensued, though Sanabria could not say who struck whom first. Sanabria testified that during a one-on-one fight with appellant, he felt a knife in his neck, and he suddenly felt "like someone poured hot water on" him. Sanabria testified that he did not see a knife, but immediately after this appellant said, "Let's go. I've got him." Sanabria stood up and felt woozy; he was bleeding. His girlfriend drove him to a nearby emergency room, and he underwent surgery. At the time of trial, Sanabria testified he could not feel anything on his left side or chest as a result of the stab wound. Sanabria testified that while he was hospitalized,

2

appellant spoke to him on a friend's cellular phone. According to Sanabria, appellant laughed and told Sanabria, "I'm going to kill you." Sanabria and appellant did not know each other prior to their encounter at Clymer's party.

Clymer testified that her romantic relationship with appellant ended two months prior to trial. She admitted she heard appellant was a gang member. She also testified reluctantly that appellant admitted to her that he stabbed Sanabria and that she and appellant discussed how he might avoid a conviction.

The surgeon who operated on Sanabria testified Sanabria's stab wound was approximately one inch wide and extended three to four inches into a muscular portion of Sanabria's neck. The wound was on the left side of the neck and went backward, behind Sanabria's throat. The trajectory missed Sanabria's esophagus and any major arteries. The surgeon testified the wound was just millimeters away from major arteries, including blood vessels leading to the brain, and that the stabbing bruised major arteries. The stab wound could have caused death or more severe injuries. The surgeon called it "a very lucky injury."

The surgeon further testified that a knife likely caused the wound during face-to-face contact. He testified that the injury was inconsistent with a reckless or accidental injury caused by a sharp object. Because the object had to be pushed through inches of muscle, the injury was consistent with an intentional use of force.

Appellant testified in his own defense. He denied stabbing Sanabria and denied that he used or exhibited a knife during the altercation. According to appellant, Sanabria and three or four friends tried to jump him while he was waiting outside to see Clymer. Appellant stated he was on the ground with multiple people swinging at him. Appellant

3

testified that he would not have started a fight with three or four people and that as he tried to get away, Sanabria's group threw flower pots, playpens, and everything at him. Appellant opined that any one of the other people participating in the altercation could have stabbed Sanabria.

Appellant's brother, Daniel Caminorreal, witnessed most of the events from a nearby parked car. According to his testimony, the fight was a one-on-one altercation between appellant and Sanabria, as opposed to a group of people jumping appellant. Daniel testified that he did not see a knife.

## II. ANALYSIS

### A. Self-Defense Instruction

By his first issue, appellant argues that the evidence was sufficient to support a self-defense instruction and that the trial court erred by not including a self-defense instruction in its jury charge. The record, however, shows that appellant did not request a self-defense instruction.

A trial court does not have a duty to *sua sponte* instruct the jury on a defensive issue raised by the evidence. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc) (citing and applying Texas Code of Criminal Procedure article 36.14 to the issue of whether a defendant who did not request a jury instruction on mistake of fact could complain about the omission of the instruction for the first time on appeal); *Vasquez v. State*, 2 S.W.3d 355, 362 (Tex. App.—San Antonio 1999, pet. ref'd) (holding trial court had no duty to include an unrequested self-defense instruction in its jury charge). Under *Posey,* a party can forfeit the right to complain about the omission of a defensive issue because the defensive issue must be requested before the trial court has a duty to place

4

it in the charge; no error occurs absent a request. *Williams v. State*, 273 S.W.3d 200, 223 (Tex. Crim. App. 2008). One reason for this rule is that decisions as to the defensive theory should be left to the defendant and his lawyer. *Posey*, 966 S.W.2d at 63.

In this case, during the charge conference, the trial court explained the contents of the charge to defense counsel and the prosecutor. The trial court explained he was not including a self-defense instruction in the charge because it was not supported by the evidence and therefore was not appropriate under the case law. The trial court then asked the parties if they had any objections or if they would like any other instructions included in the jury charge. Defense counsel objected that the charge did not include an instruction on mutual combat and requested a defensive instruction on mutual combat. The trial court denied the request. Defense counsel did not make any further objection or comment concerning the court's charge.

A mutual combat instruction is appropriate when the evidence shows an antecedent agreement between persons to fight; mutual combat precludes a claim of self defense. *See Lujan v. State*, 430 S.W.2d 513, 514 (Tex. Crim. App. 1968); *Talamantes v. State*, 275 S.W. 1052, 1053–54 (Tex. Crim. App. 1925). Because appellant chose not to request a jury instruction on self defense, the trial court did not err by omitting a self-defense instruction from its charge. *See Posey*, 966 S.W.2d at 62; *Vasquez*, 2 S.W.3d at 362. Appellant's first issue is overruled.

## B. Sufficiency of the Deadly-Weapon Evidence

By his second issue, appellant argues the evidence is factually insufficient to support the jury's deadly-weapon finding because he testified that he did not use or exhibit a sharp object at the time of the offense. He further argues that no witness

testified that they saw a knife or sharp object during the altercation, and that the investigating officer did not find such a weapon. Appellant emphasizes his own testimony that the complainant and his friends chased him with flower pots, play pens, and possibly other objects, and that these could have caused the complainant's injury.

We review a sufficiency challenge styled as a "factual sufficiency" challenge under the *Jackson v. Virginia* sufficiency standard. *See Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979); *Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.); *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). "It bears emphasizing that a rigorous and proper application of the *Jackson v. Virginia* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard (especially one that is 'barely distinguishable' or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard)." *Brooks,* 323 S.W.3d at 906. To determine whether evidence was sufficient to support a deadly-weapon finding, we apply the *Jackson* standard and determine whether, after viewing the evidence in the light most favorable to the State, any rational fact finder could have concluded that a deadly weapon was used or exhibited. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing *Jackson*, 443 U.S. at 319).

We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson,* 443 U.S. at 326. When, as here, the testimony of the State's witnesses conflicts with the testimony of the defendant's witnesses, the jury may believe all, part, or none of any witness's testimony. *State v. Mercier*, 164 S.W.3d 799, 813–14 (Tex. App.—Corpus Christi 2005, pet. ref'd); *Moody v. State,* 830 S.W.2d 698, 699–700 (Tex. App.—Houston [1st Dist.] 1992, pet ref'd). The

jury resolves questions about the credibility of witnesses and the weight to be given to their testimony. *Mercier*, 164 S.W.3d at 813–14; *Moody*, 830 S.W.2d at 700.

The State charged appellant with aggravated assault using a sharp object. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2). In its charge, the trial court defined a deadly weapon as "anything that in the manner of its use or intended use is capable of causing serious bodily injury or death." *See id.* § 1.07(17)(B). As summarized above, substantial evidence including expert medical testimony and Sanabria's testimony support the conclusion that appellant used a knife or other sharp object to stab Sanabria's neck, thereby causing serious bodily injury and the possibility of death. We conclude the evidence was sufficient to support the jury's deadly-weapon finding. *See Nadal v. State*, 348 S.W.3d 304, 315–16 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also McBride v. State*, 359 S.W.3d 683, 686 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Appellant's second issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

Gregory T. Perkes
Justice

Publish
TEX. R. APP. P. 47.2 (b)

Delivered and filed the
24th day of May, 2012.

7