

# NUMBER 13-11-00437-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MATHEW ADAM ROPPOLO,**                                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                               **Appellee.**

---

**On appeal from the 359th District Court
of Montgomery County, Texas.**

---

# MEMORANDUM OPINION[1]

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Mathew Adam Roppolo, appeals his conviction for evading arrest or detention with a vehicle, a state-jail felony, elevated to a third-degree felony by a finding that appellant used or exhibited his truck as a deadly weapon during the commission of the offense. *See* TEX. PENAL CODE ANN. §§ 12.35, 38.04(b)(1) (West 2011). Following

---

[1] Pursuant to an order issued by the Supreme Court of Texas, this case is before us on transfer from the Ninth Court of Appeals, Beaumont, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

a jury trial, appellant was found guilty. After finding six enhancement allegations to be true, the trial court sentenced appellant as a habitual-felony offender to a term of thirty-five years of confinement in the Texas Department of Criminal Justice, Institutional Division. *See id.* § 12.42. By a single issue, appellant argues the evidence is insufficient to support the jury's deadly-weapon finding. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellant passed a number of bad checks at the Brookshire Brothers grocery store in Magnolia, Texas. At approximately 7:30 p.m. on December 2010, the store manager saw appellant enter the store and try to pass a check. The manager engaged appellant in conversation and took his driver's license, seeking to delay appellant until police officers arrived to arrest him.

Appellant, however, fled the store and entered his pick-up truck. The manager followed, promising to return appellant's driver's license if appellant would accompany the manager back inside the store. As the manager concluded his conversation with appellant in the parking lot, Sergeant Jose Lopez, with the Magnolia Police Department, arrived at the scene in a police car. Sergeant Lopez pulled in behind appellant's pick-up and activated his "take-down" lights, illuminating appellant's pick-up in a "clear, white beam" of light. Nonetheless, appellant drove off. When appellant did not respond to the take-down lights, Sergeant Lopez turned on his emergency red-and-blue flashing lights and soon after activated his siren. Rather than pulling over, appellant proceeded to

---

    [2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

evade detention and lead police on a high speed chase that spanned seven to nine miles.

The jury, in addition to finding appellant guilty of evading arrest or detention with a vehicle, found that appellant used or exhibited a deadly weapon, his truck, in the commission of evading arrest or detention. *See id.* § 12.35. This appeal ensued.

## II. ANALYSIS

Appellant argues the evidence is insufficient to support the jury's deadly-weapon finding because the evidence only shows appellant's use of his truck during the chase was capable of causing serious bodily injury, but not that appellant's use of his truck "actually did endanger other people." We disagree.

### A. Applicable Law and Standard of Review

Evading arrest in a vehicle is an offense for which a deadly-weapon finding may be made if the evidence warrants the finding. *See State v. Brown,* 314 S.W.3d 487, 488–91 (Tex. App.—Texarkana 2010, no pet.); *Garza v. State,* 298 S.W.3d 837, 843–44 (Tex. App.—Amarillo 2009, no pet.). A motor vehicle may be a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *See Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992). To establish a deadly-weapon finding, the State must demonstrate that: (1) the object was something that in the manner of its use was capable of causing death or serious bodily injury; (2) the weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) people were actually endangered. *Drichas v. State*, 175 S.W.3d 795, 797 (Tex. Crim. App. 2005); *see also Caminorreal v. State*, No. 13-10-00448-CR, 2012 WL 1881711, at * 3 (Tex. App.—Corpus Christi May 24, 2012, no pet.) (designated for publication); *Garza*,

3

298 S.W.3d at 843 (quoting *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)). In this case, appellant only challenges the sufficiency of the evidence to show the third element, actual endangerment of others.

A deadly-weapon finding is justified if a rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury. *See Sierra v. State*, 280 S.W.3d 250, 256–57 (Tex. Crim. App. 2009). An actual danger means one that is not merely hypothetical. *See Drichas*, 175 S.W.3d at 797. In *Drichas*, the Texas Court of Criminal Appeals described the type of evidence needed to support a deadly-weapon finding. *See id.* at 799. The Court wrote that a deadly-weapon finding "does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle." *Id.* "The volume of traffic on the road is relevant only if no traffic exists." *Id.* However, capability of causing serious bodily injury or death "is evaluated based on the circumstances that existed at the time of the offense . . . and a deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Id.* The Court added that it did not mean to suggest a defendant should be charged with using a deadly weapon each time the offense of evading arrest or detention is committed. *Id.* Rather, the determination of whether a deadly-weapon finding is justified is a fact-specific inquiry into the circumstances that existed at the time of the offense and the facts will not always support such a finding. *See id.*

To determine whether evidence was sufficient to support a deadly-weapon finding,

4

we apply the *Jackson v. Virginia* standard and determine whether, after viewing the evidence in the light most favorable to the State, any rational fact finder could have concluded that a deadly weapon was used or exhibited. *See id.* at 798; *Cates*, 102 S.W.3d at 738 (citing *Jackson*, 443 U.S. 307, 319 (1979)); *see also Caminorreal*, 2012 WL 1881711, at *5. We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *See Jackson,* 443 U.S. at 326. The jury may believe all, part, or none of any witness's testimony. *State v. Mercier*, 164 S.W.3d 799, 813–14 (Tex. App.—Corpus Christi 2005, pet. ref'd); *Moody v. State*, 830 S.W.2d 698, 699–700 (Tex. App.—Houston [1st Dist.] 1992, pet ref'd). The jury resolves questions about the credibility of witnesses and the weight to be given to their testimony. *Mercier*, 164 S.W.3d at 813–14; *Moody*, 830 S.W.2d at 700.

## B.   Sufficiency of the Evidence to Support the Deadly-Weapon Finding

The evidence shows appellant actually endangered others as he led the police on a high-speed chase. As Sergeant Lopez followed appellant with his red-and-blue flashing lights and siren activated in the Brookshire Brothers parking lot, appellant drove to a parking-lot exit and "came to a very fast stop," forcing Sergeant Lopez to make an evasive maneuver with his police car. The roadway did not have traffic that required appellant to make the sudden stop.

Instead, appellant waited until a passing car (coming from the left-hand side) approached the exit, and then exited the parking lot by turning right onto the roadway. This forced the driver of the passing car to yield and take evasive action to avoid a

collision,[3] and it also slowed Sergeant Lopez in his pursuit of appellant. The roadway, FM 1488, was a two-lane highway with a center turn lane dividing the two lanes, and a deep ditch on one side of the road. This location was approximately two blocks from a major intersection. Sergeant Lopez testified, in general, that there had been many major traffic accidents in this area.

After ensuring the passing car did not hit anything, Sergeant Lopez continued to pursue appellant. Appellant accelerated to speeds of eighty-five to ninety miles per hour on eastbound FM 1488. The posted speed limit was thirty-five miles per hour and later forty-five miles per hour. Appellant did not maintain a single lane of traffic; instead he alternated between driving in the center-turn lane and the eastbound lane (right-hand side lane) of traffic. After passing the driveway of a Taco Bell restaurant approximately ten blocks east of the Brookshire Brothers store, appellant, while traveling at about eighty miles per hour, abruptly stopped his truck in the road and started reversing toward Sergeant Lopez's police car in an apparent effort to ram into the police car. Sergeant Lopez was forced to reverse his car and quickly move out of his lane of travel. He testified that at this point he was absolutely in danger as a result of appellant's actions.

Appellant proceeded to speed through the Taco Bell drive-thru area even though there were cars in the drive-thru and patrons and cars in the Taco Bell parking lot. Sergeant Lopez was afraid appellant's driving would injure someone in the parking lot, so he honked his horn as he pursued appellant. Sergeant Lopez testified the patrons in the Taco Bell parking lot looked surprised.

---

[3] Sergeant Lopez testified the driver of the passing car turned toward the right, toward the grocery store's parking-lot entrance, to avoid striking appellant's truck.

Appellant next led Sergeant Lopez through a KFC parking lot and sped through the KFC drive-thru before driving to the parking lot of a neighboring Aaron's store. Appellant then exited the parking lot. As he had done when he exited the Brookshire Brothers parking lot, when he exited the Aaron's parking lot, appellant stopped abruptly in the parking-lot exit and waited for a passing car to approach before pulling out in front of the passing car onto the road. The passing car came to an abrupt stop.

Appellant re-entered the center-turn lane on FM 1488, and sped for some distance before making a left turn, through a red light, at a busy intersection. Sergeant Lopez testified that appellant's conduct endangered the lives of others on the roadway, and that there were "school buses on the roadway" when appellant turned through the red light onto a road called Rolling Hills.

A second officer, Sergeant Sumrall, was waiting on Rolling Hills with his lights activated. He joined Sergeant Lopez in pursuing appellant, traveling behind Sergeant Lopez in a separate police car. Appellant cut through a parking lot on Rolling Hills, and exited back onto eastbound FM 1488. Sergeant Lopez estimated appellant's speed reached ninety miles per hour as he weaved between the lanes on FM 1488. Sergeant Lopez testified that his own speed as he pursued appellant was ninety miles per hour in a fifty-five mile per hour zone. Because of the danger appellant posed to "everyone" on the road, a decision was made that the Texas Department of Public Safety would use road spikes to stop appellant's truck.

As the pursuit continued, a third officer, Sergeant Valdez, joined the pursuit, traveling in a third police car. As Sergeant Lopez was warning Sergeants Valdez and

Sumrall that appellant could attempt another ramming maneuver, appellant did so. Appellant came to a screeching halt, and then reversed his truck at high speed toward Sergeant Lopez's patrol car. Based on appellant's prior attempt to ram his police car, Sergeant Lopez had left enough following distance between his police car and appellant's truck that he was able to avoid a collision by moving out of his lane of travel. Appellant made a fast turn into a dark residential subdivision that had no street lights. Appellant briefly drove through a ditch to complete his turn into the subdivision.

The subdivision had only one outlet through which it could be entered or exited, making it a suitable location to use road spikes to stop appellant's truck. Before appellant exited the subdivision, he drove through residents' lawns and stopped to release a female passenger from his truck. The road spikes were then used to stop appellant. By this time, there were at least seven law-enforcement vehicles present, representing four different law-enforcement agencies.

Sergeant Lopez testified that appellant created a danger by driving through yards in a dark subdivision and that appellant nearly caused at least three vehicular collisions and endangered the lives of multiple persons. During the course of the pursuit, other drivers were forced to pull over to the side of the road to avoid appellant's truck. He further testified that the manner in which appellant drove his truck during the chase was "absolutely" capable of causing serious bodily injury and death.

Sergeant Lopez testified that had appellant's two abrupt stop-and-ram attempts been successful in striking Sergeant Lopez's police car, serious bodily injury or death would have resulted. He added that once Sergeant Sumrall joined the pursuit, had

8

appellant succeeded in "ramming" into Sergeant Lopez's police car, Sergeant Sumrall would have rear-ended Sergeant Lopez's police car. Sergeant Lopez was trained in accident reconstruction. Based on his training and experience, he knew his late-model police car would not have been able to safely withstand a "ramming" impact from appellant's pick-up truck.

Sergeant Sumrall testified that as appellant turned left through the red light onto Rolling Hills, one of appellant's tires "locked up" causing the truck to skid as appellant made the abrupt turn. Sergeant Sumrall described appellant's driving as "[v]ery erratic and unsafe," and testified that appellant was very close to oncoming traffic as he drove down the center lane of traffic on a two-lane highway, at ninety miles per hour.

The evidence shows appellant's use of his pick-up in the course of evading arrest or detention placed others in actual danger of death or serious bodily injury. *See* *Drichas*, 175 S.W.3d at 798. We hold that the evidence, viewed in a light most favorable to the prosecution, supports a conclusion that a rational trier of fact could have found the legal elements of using a vehicle as a deadly weapon beyond a reasonable doubt. *See* *id.* Appellant's sole issue on appeal is overruled.

## III.  CONCLUSION

We affirm the trial court's judgment.

Gregory T. Perkes
Justice

Do not publish.  TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of August, 2012.

9