

NUMBER 13-11-00160-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BRYANT DWAN RILEY,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                   **Appellee.**

---

**On appeal from the 332nd District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez, and Justices Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Bryant Dwan Riley, appeals his capital murder conviction.  *See* TEX.
PENAL CODE ANN. § 19.03(a)(2) (West 2011).   A jury found appellant guilty of the offense
of capital murder, and the trial court, by two separate judgments, sentenced appellant to
life imprisonment in the Texas Department of Criminal Justice, Institutional Division,
without parole.   By issues one, two, five, and six, appellant challenges the legal and

factual sufficiency of the evidence to show that he was a "party" or "conspirator" to the commission of a murder during the course of aggravated robbery. By issues three, four, seven, and eight, appellant challenges the legal and factual sufficiency of the evidence to show he was a "party" or "conspirator" to the commission of a murder during the course of burglary of a habitation. We affirm in part; and we reverse and vacate in part.

## I. BACKGROUND[1]

George Frederick Sweeney ("Sweeney"), John Rogers Jr. (Rogers Jr.),[2] and appellant were traveling "in caravan form" at the time of a traffic stop in Jackson County, Texas. Sweeney was stopped because the trailer he was hauling did not have a license plate. Rogers Jr. and appellant also initially stopped, but appellant subsequently drove away. During a consensual search of Sweeney and Rogers Jr.'s vehicles, the police officers found an assortment of "necklaces, rings, watches, a lot of ladies jewelry, a lot of gold," blank checks, a driver's license for a woman who died a few years prior, and fur coats. Rogers Jr. gave the police officers a driver's license that actually belonged to his father, John Francis Rogers ("Rogers Sr."). Rogers Jr. told the police officers that he was taking the car that he was driving, a Mercedes-Benz, to a car dealership in Houston to "get fixed" and that the car on the trailer, a Lexus, "broke-down" on the way. After the police officers found a .22-caliber Derringer handgun in the trunk of the Lexus, they arrested Rogers Jr. because he was a felon in possession of a firearm. After later

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] John William Rogers is the son of the deceased, John Francis Rogers. Although their names are different, they are referred to as "Junior" and "Senior" in the reporter's record and parties' briefs. For clarity, we retain these designations on appeal.

2

learning that Rogers Sr. had been shot in the back of the head, the police officers also arrested Sweeney and appellant.

Investigator Gary Smejkal of Jackson County found it odd that Rogers Jr. would have women's jewelry and a deceased woman's driver's license and believed that "maybe this jewelry in the trunk of the car belonged to either the female and/or John Rogers, Sr. [Rogers Jr.'s father] and . . . wanted to verify that Rogers, Jr. either did or did not have permission to have that—that jewelry." Investigator Smejkal called Police Chief Ruben De Leon of Donna, Texas, to check "the house for this deceased female and also for John Rogers, Sr."

Police Chief De Leon knew where Rogers Sr. resided. Upon arriving, he noted the house looked vacant. He then contacted Rogers Sr.'s nephew, Guadalupe Castillo III, who was a Pharr police officer. Castillo told him that Rogers Sr. usually stayed at another house and agreed to meet him there. When they arrived, they saw the glass door by the kitchen had been shattered, glass was on the ground, and the door was open "maybe three inches." They found Rogers Sr. lying face down in the living room. Rogers Sr. had been shot in the back of the head. Police Chief De Leon, upon confirming Rogers Sr. was dead, contacted the Hidalgo County Sheriff's Office because the crime occurred "outside . . . the geographical area of the city limit boundaries."

Vic De Leon, an investigator with the homicide division of the Hidalgo County Sheriff's Department, was the lead investigator into Rogers Sr.'s death. During his investigation, he discovered that Rogers Sr. was shot twice: once in the left thigh and

3

once in the back of the head.[3]  He also discovered that a large safe in the hallway of Rogers Sr.'s home was open and empty.   Crime scene specialists searched the vehicles that Sweeney and Rogers Jr. were driving.   In addition to finding the various items the police officers observed in the vehicles' trunks during the traffic stop, the crime scene specialists found three firearms in the side panels of the trunk of the Mercedes-Benz. Inside the blue Hyundai, which appellant drove some on the night of the murder, the police officers found a box of cartridges in the side panel of one of the doors.

Investigator De Leon interviewed appellant and obtained a written statement recounting appellant's version of the events.   Appellant stated that he agreed to help Rogers Jr. get some of Rogers Jr.'s property from McAllen, Texas.   According to appellant, before they left for McAllen, Rogers Jr. and Sweeney "were discussing how they were going to go down there and make the entrance."   Rogers Jr. "pulled out some maps that had pictures of the canal, two gates, and two buildings."   In this regard, appellant stated:

> While driving to McAllen, Texas [Rogers Jr.] and I were discussing about the money, how much we were going to get paid, and what roll [sic] each one of us was going to take.   My role was to drive; [Rogers Jr.'s] and [Sweeney's] roll [sic] was to go inside the house.   [Rogers Jr.] and [Sweeney] were going [t]o go get [Rogers Jr.'s] stuff.   [Rogers Jr.] told us that he was going to the safe because he had some stuff he had to get out of there.   [Rogers Jr.] said that he was going to have to go in there with the man or he was going to have to hurt somebody.   [Rogers Jr.] and [Sweeney] were talking about punching him.

Appellant asserted that he was not involved in the actual murder; rather, his role was to wait at a nearby cemetery until Rogers Jr. called for him.   When he later arrived at

---

[3]   Doctor Norma Jean Farley, a forensic pathologist, testified the gunshot wound to the head was the cause of death.

4

the house, he saw broken glass and realized that "something went further than it should have." Nevertheless, after seeing Rogers Sr. dead, appellant helped Rogers Jr. and Sweeney take various items and vehicles from the house.

Investigator De Leon testified, "I believe he [appellant] wasn't being completely forthcoming with all the information, but that's what he provided, so that's what I wrote down." He later stated more emphatically, "[f]rom the interview . . . I believe [] that he was lying to me."

Darling Rogers Junkin is Rogers Sr.'s daughter and Roger Jr.'s sister. She testified that only Rogers Sr. and she knew the combination to the safe. Inside the safe, Rogers Sr. kept several things that belonged to his deceased wife; she passed away a few years before this incident. Rogers Sr. also kept everything just as his wife had left it when she died. Junkin stated that Rogers Sr. had purchased the Mercedes-Benz for her and that Rogers Jr. was not allowed to visit Rogers Sr. because "every time he came, something was missing." According to Junkin, "[D]addy had told [Rogers Jr.] he was no longer going to help him, no longer going to bail him out, no longer going to get him out of trouble. He was cut out of the will and he was to get nothing."

Crime-scene specialists recovered two nine millimeter Luger cartridge casings from the crime scene; one was found sitting on an entertainment center shelf and the other was found on top of a picture frame hanging in the hallway where the safe was located. Richard Hitchcox, a forensic firearm and tool mark examiner with the Texas Department of Public Safety Crime Lab, after examining a total of seven guns and the two casings that had been seized, concluded that "[t]he two 9 millimeter Luger caliber

5

cartridge cases . . . were fired from the same firearm." Hitchcox testified that none of the firearms that he analyzed shot the two casings.

The jury found appellant guilty of two counts of capital murder: count one—murder during the commission or attempted commission of a robbery; and count two—murder during the commission or attempted commission of a burglary of a habitation. The trial court thereafter entered two judgments—one for each count—and ordered that the sentences run concurrently.

## II. SUFFICIENCY OF THE EVIDENCE—CAPITAL MURDER / ROBBERY

By issues one, two, five, and six, appellant challenges the legal and factual sufficiency of the evidence to show he was a "party" or "conspirator" to the commission of a murder during the course of aggravated robbery. The Texas Court of Criminal Appeals, however, in *Brooks v. State*, requires us to review all "factual sufficiency" challenges under the *Jackson v. Virginia* sufficiency standard. 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.); *see Caminorreal v. State*, 374 S.W.3d 479, 482 (Tex. App.—Corpus Christi 2012, no pet.).[4] Therefore, we will solely proceed with a legal sufficiency of the evidence analysis.

### A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim.

---

[4] Appellant challenged the *Brooks* holding on appeal, arguing it violates the Texas Constitution and Texas statutes. Appellant, however, abandoned this argument during oral argument.

App. 2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in original); *see Brooks*, 323 S.W.3d at 898–99. The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

**B. Applicable Law**

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person commits capital murder if the murder is committed in the course of committing or attempting to commit one of the statutorily-enumerated offenses, including robbery. *See id.* § 19.03(a)(2). A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily

7

injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See id.* § 29.02(a)(1)–(2). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *See id.* § 31.03. Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

A person is criminally responsible as a "party" to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *Id.* § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). If, in an attempt to carry out a "conspiracy" to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *Id.* § 7.02(b).

Proof of a culpable mental state invariably depends on circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *De Leon v. State*, No. 13-09-00606-CR, 2011 WL 3847180, at *4 (Tex. App.—Corpus Christi Aug. 30, 2011, no pet.) (mem. op., not designated for publication). "A jury can infer knowledge from all the circumstances, including the acts, conduct, and remarks of the accused and the

8

surrounding circumstances." *De Leon*, 2011 WL 3847180 at *4 (citing *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978)).

The State is not required to present direct evidence to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Guevara*, 152 S.W.3d at 49. Circumstantial evidence can also prove party status. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996)). The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49. This is also true regarding whether the evidence is sufficient to support a conviction under the law of parties. *See Gross*, 380 S.W.3d at 186.

"To determine whether an individual is a party to an offense, the reviewing court may look to 'events before, during, and after the commission of the offense.'" *Gross*, 380 S.W.3d at 186 (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)). There must be sufficient evidence of an understanding and common design to commit and offense. *Id.* (citing *Guevara*, 152 S.W.3d at 49). "[M]ere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Id.* (citing *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985)).

9

## C.    Discussion and Analysis

Appellant contends that the evidence is insufficient to support a conviction for murder committed in the course of a robbery.   We disagree.

Appellant admitted in his statement that he, Sweeney, and Rogers Jr. planned to get some property, or as appellant stated, "get paid," by going inside a house and retrieving items from a safe while "hurt[ing] someone."   Appellant described his involvement in the scheme as satisfying a role.   Appellant's "role" was to serve as a driver while Sweeney and Rogers Jr. had the role of "go[ing] inside the house."   Looking to the surrounding circumstances, the evidence showed that appellant, Sweeney, and Rogers Jr. planned how to "make the entrance" while reviewing maps and photographs; that appellant traveled from Houston to McAllen with the purpose of getting property through the use of force; that the planned use of force was to punch Rogers Sr.; that appellant's "role" was to wait in a cemetery near the house until Rogers Jr. called him; and that appellant, even after seeing the body of the deceased, helped take several items from Rogers Sr.'s residence, including an assortment of "necklaces, rings, watches, a lot of ladies jewelry, a lot of gold," blank checks, a driver's license for a woman who died a few years prior, fur coats, and two vehicles.

Although there is additional incriminating evidence, appellant's statement, alone, is sufficient evidence for the jury to find appellant guilty as a conspirator to the robbery. *See* TEX. PENAL CODE ANN. §§ 7.02 (a), (b); 29.02(a)(2) (West 2011).   In turn, appellant is guilty of the felony actually committed—murder—if the murder was committed in furtherance of the robbery and should have been anticipated as a result of carrying out

10

the conspiracy. *See id.* § 7.02(b). That the murder was committed in furtherance of the robbery is evident. Rogers Sr. was killed, and his safe, to which there was evidence that only he and his daughter knew the combination, was open and emptied. Whether appellant should have anticipated the murder is a question of fact for the jury. *See Davis v. State*, 276 S.W.3d 491, 497 (Tex. App.—Waco 2008, pet. ref'd) (applying deferential sufficiency of the evidence review to the issue of anticipation).

In appellant's statement, appellant characterizes his involvement as an attempt to help Rogers Jr. retrieve his own property and not to take the property of Rogers Sr. Investigator De Leon testified that he thought appellant, in making his statement, withheld information and lied to him. In this regard, the trial court included in the jury charge an instruction regarding mistake of fact, charging the jury to find appellant "not guilty" if it found "that he acted under the mistake of face [sic] that the property sought to be recovered belonged to John William Rogers; that John William Rogers had a right to said property; that no robbery or burglary was to take place . . . ." We defer to the jury as the exclusive judge on the credibility of Investigator De Leon's testimony and the weight of the other evidence. *See Anderson*, 322 S.W.3d at 405. The jury found appellant guilty, and we view the evidence in the light most favorable to the verdict. *See Johnson*, 364 S.W.3d at 293–94.

We hold that a rational trier of fact could find the essential elements for robbery, conspiracy to commit robbery, and murder beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 7.02 (a), (b); 29.02(a)(2) (West 2011). Alternatively, we hold that there was sufficient evidence for the jury to find appellant responsible as a "party" to an offense.

11

*See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). Appellant's participation in planning the crime, performing his "role," stealing the property, and fleeing the scene, support a finding of criminal responsibility for the conduct of another participant in the offense. We overrule appellant's issues one, two, five, and six.

### III. DOUBLE JEOPARDY

Section 19.03 of the Texas Penal Code lists several ways to commit the offense of capital murder. *See* TEX. PENAL CODE ANN. § 19.03 (West 2011). By two separate judgments, appellant was convicted and sentenced on two separate counts: (1) murder in the course of robbery; and (2) murder in the course of burglary of a habitation. The life sentences are to run concurrently. Both counts arise from the same conduct. Although appellant did not raise a double-jeopardy issue on appeal, we have jurisdiction to consider it sua sponte when it is apparent from the face of the record. *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008) (citing *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

Convicting appellant on two counts that arise from the same conduct exceeds the allowable unit of prosecution for capital murder under Texas Penal Code section 19.03. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011); *Saenz v. State*, 166 S.W.3d 270, 274 (Tex. Crim. App. 2005) (holding the "Double Jeopardy Clause of the Fifth Amendment was violated when the State charged appellant with three separate counts of capital murder . . . because the charges rely on the same three murders for each charge*.")*; *see also Ramirez v. State*, No. AP-75167, 2007 WL 4375936, at *5 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication) (citing *Sanabria v. United States*, 437

12

U.S. 54 (1978)) (holding that multiple convictions under section 19.03 for the same conduct exceeds the allowable unit of prosecution).   "When a defendant is subjected to multiple punishments for the same offense, the remedy is to affirm the most serious offense and vacate the other convictions."   *Meine v. State*, 356 S.W.3d 605, 610 (Tex. App.—Corpus Christi 2011, pet. ref'd) (citing *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006); *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997)).

The "most serious offense" means the offense with the greatest sentence.   *See Meine*, 356 S.W.3d at 610 (citing *Bigon*, 252 S.W.3d at 373; *Ex parte Cavazos*, 203 S.W.3d at 338)).   Inasmuch as both counts carry a life-time sentence, we hold that count two will be vacated:   murder during the commission of a burglary of a habitation.[5]

## IV. CONCLUSION

We affirm the trial court's judgment for capital murder based on robbery.  We reverse the trial court's judgment for capital murder based on burglary of a habitation on the grounds of double jeopardy, and vacate the judgment involving that count.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
7th day of March, 2013.

---

[5] Appellant's issues three, four, seven and eight challenge the sufficiency of the evidence regarding burglary of a habitation.   Given our disposition, it is unnecessary for us to address appellant's remaining issues involving burglary of a habitation.   TEX. R. APP. P. 47.1, 47.4.